GEORGE W. WILLIAMS *et al.,* Appellants, *vs.* WILLIAM H. HERRICK, Administrator.

A testator gave all his estate, after the payment of debts and funeral expenses, to his widow for life with remainder over. In settling the accounts of the administrator with the will annexed :

*Held,* that the estate being taxable to the administrator under Pub. Stat. R. I. cap. 42, §§ 12, 13, taxes paid by him were properly charged in his account but the amounts of these taxes were to be deducted from the income payable to the widow.

*Held,* further, that an account allowed by the Probate Court and not appealed from cannot be opened to review the compensation of the administrator. Pub. Stat. R. I. cap. 190, §§ 8, 10.

*Held,* further, that Courts of Probate have no jurisdiction to allow the payment of legacies. *Arnold* v. *Smith,* 14 R. I. 217, affirmed.

*Held,* further that Pub. Laws R. I. cap. 751, of April 26, 1889, for perpetuating evidence of payments by executors and administrators, has no reference to the accounts referred to in Pub. Stat. R. I. cap. 179 and cap. 190.

APPEAL from the Probate Court of the town of Johnston. Heard by the Court.

*January* 2, 1893. ROGERS, J. ·This is an appeal from the decree of the Court of Probate of Johnston, allowing the third account, that for the year 1889, of William H. Herrick,

administrator with the will annexed of the estate of Amos W. Olney, deceased, wherein said administrator is allowed $1500 as recompense for his personal trouble for the year, and is also allowed to charge in the account $640.80, taxes assessed on the estate during that year, and $3487.16 being income of the estate for that year, paid Mrs. Olney, the testator's widow, all of the testator's estate after paying debts and funeral expenses, having been given by his will to his wife for life, with remainder over upon certain trusts. The appellants, who are interested in the remainder, object to the allowance of the above named items, and also insist that the account should be surcharged, *first*, with a portion at least of the sum of $1500 allowed the administrator as recompense for his personal trouble in his second account that for the year 1888 ; *second*, with the taxes assessed and paid in 1887 and 1888 ; and *third*, with the amounts, being income of the estate, paid the widow during 1887 and 1888 ; and which taxes and amounts paid the widow appear on the debit side of the administrator's first and second accounts respectively, both of which accounts have been allowed by the Court of Probate without an appeal having been taken therefrom. Failing in that claim then they contend that the pending account should be rectified by diminishing the charges therein for income paid Mrs. Olney by the amount of the charges for tax and for the administrator's compensation for services, as both said tax and compensation should have been paid out of income and not out of principal ; and that in the first and second accounts Mrs. Olney had been over paid on account of income by the amount of the taxes for the two years embraced in those accounts, and also by a part of the amount, at least, charged in the second account as the administrator's compensation for services, all of which sums it is claimed should have been paid out of income and not out of principal, and that the credit side of the third account should be increased by the amounts of those erroneous charges of payment to Mrs. Olney. To avoid misapprehension the form of this administrator's account must be borne in mind. Instead of treating them as the accounts of the administrator with

the testator's estate and charging himself with the inventory and other receipts, and crediting himself with the payments, he just reversed the form and made them the accounts of the testator's estate with the administrator, whereby the inventory and receipts appear on the credit side of the accounts and the payments on the debit side.

The testator died August 11, 1886, and his widow who was named as sole executrix in his will, having declined to act, the appellee was duly appointed administrator with the will annexed, and returned an inventory December 31, 1886, amounting to $79,395.78. After deducting from the inventory the amount allowed the widow for furniture, and the amounts allowed for expense, for expense of grave stone, and for errors, the accounts for the three years showed beyond that, a shrinkage of about $9,000 in the *corpus* of the estate, with no debts paid or to be paid, and with nothing charged off on account of over-valuation.

The question we will consider first is whether the second account, after having been allowed by the Court of Probate without an appeal having been taken therefrom, can be reopened for the purpose of revising the recompense allowed the administrator for his personal services. The allowance of such recompense as the Court of Probate shall consider just, is expressly provided for in Pub. Stat. R. I. cap. 190, § 8, and is therefore unquestionably within the jurisdiction of such court. The statute likewise provides that the settlement of an executor's or administrator's account by the Court of Probate when not appealed from shall be final and conclusive and shall not be subject to reëxamination in any manner whatsoever. Pub. Stat. R. I. cap. 190, § 10. Such accounts, however, notwithstanding the provisions of the statute, may be opened when obtained by fraud, or to correct manifest mistake resulting from accident or oversight. *Pratt* v. *Northam,* 5 Mason, 95, 103 ; *Mallett* v. *Dexter,* 1 Curtis, 178, 182 ; *Brick's Estate,* 15 Abb. Pr. 12, 35 ; *Pew* v. *Hastings,* 1 Barb. Ch. 452 ; *Stetson* v. *Bass,* 9 Pick. 26, 29 ; *Wiggin* v. *Swett,* 6 Metc. 194, 198 ; *Sherman & Wife* v. *Chace,* 9 R. I. 166. There is no pretence of fraud in this case, but it is con-

tended that the Court of Probate erred in allowing so large a sum for services out of the *corpus* of the estate, and that a part at least should have been paid out of the income. The general expenses of the administration should fall upon the *corpus* of the estate as they are incurred for the benefit of the whole estate. *Walcott, Adm'r* v. *Pitcher*, 7 R. I. 555 ; *Sawyer* v. *Baldwin*, 20 Pick. 378, 388 ; *Bridge* v. *Bridge*, 146 Mass. 373, 377. However proper it might have been in this case for the income to bear a part of the amount imposed upon the principal, yet under the statute it was for the Court of Probate to say what recompense it was just to allow the administrator for his personal services as a part of the general expenses out of the *corpus*, and it having fixed the amount and adjudicated the matter, there being no way of determining that anything was allowed for collecting the income that was to go to Mrs. Olney, in contradistinction to the general expenses of administration, we do not feel warranted on the ground of manifest mistake, in opening the account for that purpose after it has been allowed and not appealed from.

The $1500 allowed the administrator for services out of the *corpus* of the estate in the third account, which is now before us on appeal, is a grossly excessive charge against any fund, either principal or income, and cannot, nor can any part of it, be allowed out of the *corpus*. During the time covered by the third account the administrator performed no service beneficial to the estate. He paid no debt; nor discharged any duty of administration. He collected the income, indeed, and paid it over to Mrs. Olney, and he paid the taxes, but taxes upon a life estate and compensation for the collection and payment of the income of such an estate are not proper charges upon the principal fund. *Walcott, Adm'r,* v. *Pitcher*, 7 R. I. 555 ; *Bailey, Petitioner*, 13 R. I. 543, 561 ; *Pell* v. *Mercer*, 14 R. I. 412, 432 ; *Wood* v. *Hammond*, 16 R. I. 98, 121 ; *Grinnell* v. *Baker*, 17 R. I. 41, 48 ; *Holcombe* v. *Holcombe*, 29 N. J. Eq. 597, note ; *Spangler's Estate*, 21 Pa. St. 335 ; *Ellis* v. *Ellis*, 12 Pick. 178, 182. In *Peirce* v. *Burroughs*, 58 N. H. 302, 305, Chief Justice Doe laid the rule down in this wise : "B. gave his

widow a life estate ; and a life estate is a net use and income, not including a diminution of the capital by the diversion of it to the payment of any part of the ordinary expenses of its preservation.    The preservation of the capital during a life estate, by the shingling of a house, by payment of taxes or interest of an incumbrance, or by any other performance of the life tenant's duty of abstaining from permissive waste, is beneficial to the remainder-man, but he is chargeable with no part of the expense of the performance of that duty. The performance of that duty by the life tenant is the right of the remainder-man . . . . . The compensation of B.'s executor for care and management of the property, presumed to be an ordinary, because not shown to be an extra-ordinary, expense of the preservation of the capital ( not including any of the expenses of administration), should be paid out of the income."

What compensation the administrator may be entitled to for collecting the income and paying it over to Mrs. Olney must be taken from the income and not from the *corpus*, and as the Probate Court has no jurisdiction over the payment of legacies, as we shall shortly see, it also has nothing to do with the compensation to be paid for such services. The sum of fifteen hundred dollars charged in the administrator's third account for services is disallowed and must be stricken out.

Although the taxes are payable out of the income, yet inasmuch as the property of the estate is assessable by statute to the administrator, Pub. Stat. R. I. cap. 42, §§ 12, 13, we think that the taxes are properly charged in the administrator's account.    When the income is paid to Mrs. Olney it will devolve upon the administrator to see that the taxes and any other expense payable out of income, are properly deducted from the income so paid to her.

The question of allowing the income paid Mrs. Olney in the third account, and of surcharging the third account with the amounts paid Mrs. Olney as income or legacy charged in the first and second account can be taken together, and will now receive consideration.

The appellants claim that the Court of Probate is a creature of the statute, and had no statutory jurisdiction over the payment of legacies or of the allowance of charges for the same; that the payment of legacies involves chancery construction and powers; that chancery powers are vested under the constitution in the Supreme Court alone; and that neither custom, statute nor construction could warrant the Probate Court's assumption of power to allow the legacy payments. There certainly is no express provision in the statutes for the payment of legacies under an order of the Court of Probate, or for their allowance in executors' accounts. The appellee, however, claims that the whole course of our legislation shows that the Probate Court has jurisdiction over such payments. The first statute law of the Colony of Rhode Island relating to probate, adopted after the granting of King Charles' charter, was enacted in 1663, in which each Town Council was given power "as Judge of Probate, to take the probate of wills and testaments, and grant administration, and all other matters relating thereto, to act and do, as by the laws of England and of His Majesty's Colony doth belong to the said office;" R. I. Laws 1663–1745, p. 4; and this was reënacted in the Digest of 1767, p. 214. In the digest of 1798, p. 276, Town Councils were constituted Courts of Probate, and as such it was provided that "they shall have full power and authority to take the probate of wills, to grant administration; . . . to examine, allow and settle the accounts of executors, administrators and guardians; and to do and transact all such matters and things as the Courts of Probate within the several towns shall by the laws of this State have cognizance and jurisdiction of;" and this provision was reënacted in the Revisions of 1822 and 1844. In 1857, the provision was somewhat recast, and in the Pub. Stat. R. I. cap. 179, § 22, it is provided that Courts of Probate "may and shall examine, allow and settle the accounts of executors, administrators and guardians by them appointed;" and in § 37, it is provided that "every Court of Probate shall have power to do and transact all matters and things incidental to the powers hereinbefore granted and all such other matters

and things as are or may be appointed by law." Cap. 190, § 1, provides "that every executor and administrator shall make out and return to the Court of Probate, yearly in every year, his account relative to the estate in his hands, with a statement of the liquidated balance that may be due to or from him;" and provision is subsequently made for citing any executor or administrator having unsettled accounts to show cause why he has neglected to exhibit the account aforesaid.

It is claimed by the appellee that the language of the statute in force down to 1798 was broad enough to confer on Courts of Probate all the jurisdiction of both the ecclesiastical and chancery courts of England and that subsequent acts did not essentially change it, at least as to requiring accounts of executors which should include legacies, and that so far as any chancery jurisdiction was involved the authority to continue it was saved to the General Assembly by Art. 10, Sec. 2, of the Constitution.[1]

We do not think that so important a jurisdiction should rest upon an implication, by no means clear and convincing, drawn from mere general words. Unless the Court of Probate has power to construe the will, and to apply its provisions, it is difficult to see how it can require and settle an account as to legacies; for how can it say who the legatees, or what the legacies are, or when the latter are payable? Legacies may be for life or for years, with remainders over, oftentimes upon various conditions, and to classes not easily ascertainable, involving some of the most difficult questions known to the law, and the very case at bar affords an illustration of some of these difficulties.

It has been urged that the inclusion of legacies in executors' accounts has been the practice among Courts of Probate in this State for a long period of years, and that such usage

---

[1] As follows:

"Sec. 2. The several courts shall have such jurisdiction as may from time to time be prescribed by law. Chancery powers may be conferred on the supreme court, but on no other court to any greater extent than is now provided by law."

should determine the construction of the statute. Undoubtedly, general and long continued usage may often well be regarded in construing a statute, but when the assumption of so important a power as construing and applying the provisions of wills depends upon usage solely, such a method of construction does not meet with our approval.

This question as to the power of Probate Courts over legacies was practically settled in *Arnold* v. *Smith*, 14 R. I. 217, decided in 1883, and we see no reason for questioning its authority. It is urged on the part of the appellee that the court in that case misapprehended the decisions cited therein, but it does not seem so to us. Indeed, the two Maine cases of *Smith* v. *Lambert*, 30 Me. 137, and *Williams, Judge, &c.* v. *Cushing*, 34 Me. 370, cited by the appellee, support *Arnold* v. *Smith*, in our opinion, instead of weakening it.

In *Smith* v. *Lambert*, 30 Me. 137, 145, 147, decided in 1849, which was an action for a residuary legacy, Mr. Justice Tenney said: "So far as the settlement of an executor's account in the probate office, should be within the jurisdiction of the Probate Court, it would be conclusive upon all. But the allowance of a charge against the estate, not within the probate jurisdiction, would be entirely nugatory. The payment of a sum of money to a supposed legatee beyond the amount to which he was entitled, would furnish no protection to the executor, although the account containing the charge therefor, might have been allowed . . . . The payment to other residuary legatees beyond their proper proportion is no protection to the defendant, notwithstanding the charges have been allowed in probate."

In *Williams, Judge, &c.* v. *Cushing*, 34 Me. 370, 375, decided in 1852, being an action of debt on probate bond for a residuary legacy, Mr. Justice Appleton said: "As this sum has been allowed the executor by the Judge of Probate in the settlement of his account, it is insisted that this allowance is forever binding and conclusive upon all parties interested. The decree of the Judge of Probate upon all matters within his jurisdiction is final unless vacated by appeal. As to matters without his jurisdiction it is null and void. It is no part

of his duty to settle the legal construction of a will, to deter-termine in case of different claimants to whom payment should be made, or when the amount is contested, what the sum shall be. All these questions belong to another tribunal. The executor might await the legal decision of controverted rights, or he might on his own responsibility decide for himself. He chose the latter and must abide the result. These funds then are to be deemed as still legally in his hands."

" The probate accounting," says Mr. Schouler in his work on Executors and Administrators, § 527, "in theory and apart from local code or practice, settles nothing but the basis upon which distribution may afterwards be made in a proper tribunal, and ascertains what balance, if any, is left for that purpose." After referring to intestate estates he proceeds as follows: " But, as to testate estates, a probate court has no inherent jurisdiction to decide who are entitled as legatees under the will, nor can it, in the absence of some enabling act, decree to whom, or at what time, legacies, or the residuary fund shall be paid."

We think that both reason and authority sustain the decision of this court in *Arnold* v. *Smith*, which was referred to approvingly in *Probate Court of Scituate* v. *Angell*, 14 R. I. 495, 499.

We are of the opinion that the statutes of this State, above referred to, do not include legacies within an executor's account, and that such inclusion is not within the jurisdiction of probate courts.

We do not think that the provisions of Pub. Laws R. I. cap. 751, of April 26, 1889,[1] have any application to this case. The account allowed under its provision affords evidence that money so paid or articles delivered, were so paid and de-

---

[1]As follows:

SEC. 1. When an executor or administrator has paid or delivered over money or other property in his hands, he may perpetuate the evidence thereof by presenting to the court by which he was appointed an account of such payment or of the delivery over of such property, which account being verified by the oath of such executor or administrator, shall be allowed and ordered to be recorded.

SEC. 2. All acts and parts of acts inconsistent herewith are hereby repealed, and this act shall take effect from and after its passage.

livered, without determining whether they were rightly so paid and delivered.    Such an evidentiary account has no connection with and forms no part of the accounts referred to in cap. 179 and cap. 190 of the Public Statutes.

We are of the opinion,

*First.*    That the taxes paid are rightly charged in the several accounts.

*Second.*    That the second account cannot now be reopened to revise the amount allowed therein for the administrator's compensation for services.

*Third.*    That the charge for the administrator's compensation for services in the third account cannot be allowed, and must be stricken out.

*Fourth.*    That the Court of Probate had no jurisdiction over the payment of legacies, and therefore that legacies whether rightly or wrongly paid cannot be included in the account of payment of debts, funeral charges, the expenses of the administration of the estate, &c., hence the charges of amounts paid Mrs. Olney as income in the pending account must be disallowed and stricken out, and the credit side of said third account must be further increased by the amounts of the charges in both the first and second accounts, for income paid Mrs. Olney.

*Fifth.*    That the provisions of Public Laws R. I. cap. 751, of April 26, 1889, have no application to this case, the evidentiary account therein referred to having no connection with and forming no part of the accounts referred to in cap. 179 and cap 190 of the Public Statutes.

Let the account be made up accordingly.

*Francis Colwell, Walter H. Barney & Albert A. Baker,* for appellants.

*James Tillinghast,* for appellee.